The first case this morning is Akin v. Berryhill. Mr. Schultz. May it please the Court, Your Honors. Barry Schultz on behalf of the appellant, Rebecca Akin. In this case, the administrative law judge reached several conclusions and made several findings for which he provided no explanation, and for which he did not build a requisite logical bridge between the evidence and his conclusions. For example, at page 26 and 27 of the administrative record in the ALJ's decision, he notes the 2014 MRI report of the claimant's lumbar, thoracic, and cervical spines, noting that they showed moderate to severe spinal canal stenosis of the cervical, or rather the thoracic spine, ligamentum flavum hypertrophy, disc protrusion at L4-L5 causing spinal stenosis with an annular tear, and a worsening disc herniation at C5-C6 also causing spinal stenosis. But the ALJ then concludes that these objective findings are consistent with the claimant's impairments but are not consistent with her alleged disabling symptoms. But the ALJ provides no explanation for that finding. For instance, why does such severe disc herniation causing spinal stenosis, why is that not consistent with the alleged limitations that the claimant said she can only sit in certain types of chairs like a recliner? Or why is it not consistent with her need to lie down during the day? Would it not cause severe pain? The ALJ reaches a conclusion based on the raw medical data without tethering that to any opinion or any assessment of the MRI in the record. The ALJ in that same paragraph there at the top of page 27, he also says that the December 2013 observations of the treating physician, Ablala, are again consistent with the claimant's impairments but not consistent with her allegedly disabling symptoms. But the ALJ doesn't say what the observations of Dr. Ablala are. And if the court would look at page 533 of the administrative record, Dr. Ablala observed that Ms. Aiken is morbidly obese, that she moved very slowly and had a lot of problems with the simplest movement. She needed help standing up after sitting. She needed help sitting up after lying down. Her cervical spine motion was limited due to stiffness and pain. Any pressure in any of the spinal areas caused her pain. She had tingling with light touch on the left forearm and hypesthesia or a decreased sensation in the left leg down to the foot with severe pain with pressure in the hips. Again, the ALJ provided no explanation why those observations were inconsistent with Ms. Aiken's alleged limitations. And without such an explanation, it would appear that those observations are actually consistent with her alleged limitations. Again, there were very significant limitations that this doctor observed. The ALJ provided no explanation, no logical bridge for his finding on this basis. In addition, the ALJ improperly discredited the claimant's testimony based on her daily activities. The ALJ includes daily activities such as the ability to perform basic housework with frequent breaks, that she could prepare simple meals. She could shop in stores, but only if she rode an electric cart and she needed assistance while shopping. She helped her two children, who were age 11 and 16 at the time, and that she sometimes took her children to the lake where she would lie on a flotation device. But this court has admonished administrative law judges in many cases that they cannot reasonably rely on a claimant's ability to perform such basic daily activities, especially when they need help performing those activities or when those activities are punctuated with rest, because in a full-time competitive job, a person can't take breaks whenever they want to. They can't sit when they want to, or they can't move around or lie down when they want to. Certainly, the fact that the claimant could lie on an air mattress or some flotation device on a lake was not inconsistent with her testimony. The fact that she helped her children, the testimony actually was that she would get up, make sure they got to school in the morning, and then she would lie back down. But she also said that her children helped her. They do most of the cooking in the house, and they do most of the cleaning. She just tells them how to proceed on those tasks. So the ALJ improperly discredited the claimant by relying on her daily activities. In addition, as noted, the ALJ recognized that those 2014 MRI reports showed a worsening of Ms. Aiken's condition. In fact, the state agency doctors who reviewed the file were unaware of any specific lumbar spine conditions, the MRI in 2014 being the first objective evidence of a lumbar spine problem, and it showed a very significant lumbar spine problem. The ALJ gave great weight to the state agency doctor's opinions but then found that he was going to make additional findings, additional limitations, based on these MRI findings. So what did the ALJ do? He found that the claimant could frequently but not constantly use her hands for fingering and handling. But again, he provided no explanation for that conclusion. Why did he find that Ms. Aiken could frequently use her hands as opposed to occasionally use her hands or rarely use her hands, given the objective evidence? The ALJ limited Ms. Aiken's ability to stoop and crouch to occasionally, but why did he limit her ability to stoop and crouch but not her ability to sit? Again, he failed to provide any explanation. The Social Security ruling 96-8P requires that an ALJ explain the basis for the findings in the residual functional capacity assessment. The ALJ can't just make the assessment. There has to be a basis for that, and this court in the Lanigan v. Berryhill case recently reached that same conclusion in reversing an ALJ's decision. Per the Goins v. Colvin and Stage v. Colvin cases, the ALJ should have had a medical expert come to the hearing or sent these MRI reports and the additional medical evidence to a physician for review to get a physician's input as to the meaning of these MRI reports, especially given the claimant's fibromyalgia, which also was severe, and her morbid obesity. You're under rebuttal, you little... Yes. Thank you. Finally, the ALJ relied on, rejected the claimant's severe headaches because of a CAT scan, which was normal. But as this court held in Moon v. Colvin, such testing, like a CAT scan, is meant to rule out causes of headaches. It's not meant to show that the person doesn't have headaches. And in this case, we have Dr. Joseph, pain management physician, who specifically said that her headaches were caused by her cervical spine problem, possibly due to the congenital fusion. The plaintiff requests that this court reverse the decision of the administrative logic. Thank you. Thank you, Mr. Schultz. Mr. Dilley? Thank you. Good morning, Your Honors. May it please the court, Javid Dilley on behalf of the commissioner. Opposing counsel's argument neatly avoids a key fact of this case, the fact that the only medical opinions of record were the opinions of the state agency doctors who concluded that despite her limitations, despite her fibromyalgia, despite her degenerative disc disease, despite her asthma, despite her allegations of headaches, Ms. Aiken could return to sedentary work with certain environmental limitations, all of which the ALJ credited. Opposing counsel contends that the ALJ was required by the evidence that followed after those opinions to go and seek an additional opinion. But another key fact of the case is that Ms. Aiken was represented by counsel before the agency, and yet, despite this evidence, despite discussing the evidence with the ALJ at the hearing, neither presented an opinion of her own, even though she had contemporaneous medical care, nor even asked the ALJ for one. And now she comes to court asking for relief, even though she didn't do what she could, despite her burden at steps one through four of the administrative disability adjudication process, to present evidence in support of the finding of disability. That is, I think, the key fact of the case that the court should consider. Opposing counsel quotes Childress for the proposition that the state agency doctor's opinions are essentially worthless. This court has always found that the ALJ may reasonably take account, may reasonably rely on state agency doctor's opinions, for example, in Fleener, X. Rel. Fleener, because they're experts in the disability adjudication process. In Childress, which is distinguishable, four years had elapsed between the state agency doctor's opinions and the ALJ's hearing. Here, only just over a year had elapsed, which is usually about the amount of time, because the second state agency doctor opinion comes in at the reconsideration stage, and then there's a gap between that and the ALJ hearing, and then sometimes a bit of a gap between that and the decision. Usually it's about a year. This was a standard period of time for the gap between the state agency doctor's opinion and the ALJ's decision. But again, importantly, Aiken didn't offer an opinion and didn't even ask for one. And now she asks the court to find that it was unreasonable for the ALJ not to go get one. Opposing counsel also cites Goins. And the court did express concern in Goins that an MRI late in the record was not adequately addressed by the ALJ, but that's how it's distinguishable. Here the ALJ exhaustively detailed the findings of the 2014 MRI, and unlike in Goins, there wasn't a new diagnosis. In Goins, the impression included an impression of a Chiari malformation, which the court expressed concern that the ALJ sort of completely overlooked. And, you know, looking it up, could cause, does not always cause, but could cause the sorts of limitations that the claimant in that case was urging, including headaches, and provided potentially an independent basis for supporting her allegations of limitations. And the court was concerned that the ALJ didn't grapple. Part of what motivated that case was the court was concerned that the ALJ didn't grapple fully with the evidence that was presented by that MRI. So Goins is distinguishable on that basis. Turning to opposing counsel's arguments with respect to the subjective complaints, first and foremost, opposing counsel makes an argument that 16.3p, a relatively recent Social Security ruling, and 96.8p require a heightened articulation. And I think the court should be careful here because implicitly what counsel is asking the court to do is turn the standard review, the current standard review, which is deferential on its head, to escalate the duty of articulation to such a standard that it would completely subvert the substantial evidence standard. Now it's true that 16.3p does require ALJs to explain what weight they're assigning to a claimant's subjective complaints. But so too does 96.8p require explanation. The court has always read that word and that duty harmoniously with a substantial evidence standard to require just that the ALJ build a logical bridge from the evidence to his or her findings. And here, that's what the ALJ did. This is a pain case. So if the ALJ gave a reasoned account for why he partially disbelieved her allegations of the most limiting effects of her pain, then implicit in that finding is an account for why he partially disbelieved or disbelieved the most limiting allegations she made about the limitations she experienced because of her pain. This is entirely a pain case. And so if the ALJ, if the court finds the ALJ gave a reasoned basis for assigning reduced weight, not fully discrediting, but assigning reduced weight to her limitation, to her subjective complaints, then it should find as well that the ALJ said enough to explain why those other limitations that were not directly addressed or explicitly addressed were discredited. Drilling down to the individual aspects of the analysis of the subjective complaints, the ALJ's analysis was reasonable. This court has acknowledged in Kolar and Sarche, the pain cases are difficult, right? Because many people, millions of people work every day with chronic pain, but a subset cannot. And so the ALJ has the unenviable task of taking medical evidence that maybe can go either way and discerning whether this particular individual is an individual that is totally disabled by pain, that cannot work. So what the ALJ did was what the SSR requires. Looked at the objective medical findings, looked at the examination findings, considered the fact that despite her allegations of total disabling pain, constant pain, which she characterized in the mosaic and characterized it as constant in the record, she was still, throughout the record, capable of full motor strength and normal ambulation. Now, the court might look at that and say, well, okay, she has normal ambulation. That doesn't mean she doesn't have pain. But what the SSR says is if over the course of a long period of time, you have pain that you allege is so total and so limiting that you can't move around very much, you would expect a loss over time of strength or to have some muscle wasting. There was no evidence of any of that in the record. And that's something the ALJ could take account of. The ALJ also considered mosaic and its conservative course of treatment. Now, opposing counsel tries to characterize that as unreasonable because Ms. Aitken was never recommended that she undergo surgery. But what the ALJ meant was that Ms. Aitken's doctors repeatedly recommended that she didn't undergo. Did the ALJ say that? Did the ALJ? I think that's a natural reading of what the ALJ said, Your Honor. Pardon? He did not say it. You said it. Well, I think what I would say in response is that the ALJ cited the fact that But that's not an explanation. You gave me the explanation. I apologize, Your Honor. My reading of the ALJ's decision is that the ALJ cited the fact that her doctors repeatedly recommended, for example, facet injections. And she rejected them in the record for a couple of reasons. One, she said that, and the ALJ did cite, that she wanted to wait until her children were out of school, and then she also expressed fear of the injections. What the ALJ said was, if you believed that, if your pain was as great as you said it was, then you would seek the street. You would overcome it. That's sort of implicit in the ALJ's decision. Opposing counsel cites stage, but I think stage is distinguishable as well. Because in stage, hip surgery, hip replacement surgery was recommended. Here it was just facet injections. So the pain attendant to hip replacement surgery, the discomfort attendant to that, the recovery time attendant to that, is all much greater than what would be involved in an outpatient facet injection. And so it would be appropriate for the court to distinguish that. The ALJ also reasonably cited her work history. Now, the ALJ said correctly that she had not demonstrated, or that she had not worked consistently over the prior period, the period before the ALJ adjudicated the case. I see that my time has expired. May I briefly conclude? Yes. But she had not worked for more than three of the 15 prior years before the ALJ's decision and could reasonably take account of that under McCurdy and Alvarado. Thank you, Your Honors. I appreciate your time. And for the reasons expressed in our brief, we ask that the court adjourn. You have two minutes, Mr. Shulman. In the Hill v. Colvin and Scott v. Astro cases, this court held that where a claimant presents objective evidence of their impairments, which could cause their symptoms, and then the claimant testifies to disabling symptoms, the claimant has done enough to at least a burden of persuasion in those cases. There's no requirement in the regulations that a claimant provide a medical opinion. Some doctors charge for reports. There's no evidence in this record that I saw as to why no medical opinion was submitted. But there's nothing in the regulations that allows the commissioner to hold that against a claimant. As for the ALJ relying on the state agency doctor opinion, the key isn't the gap in time between the state agency opinion and the ALJ decision. The key is what is the new evidence that comes into the record after the state agency doctor reviewed the file. And in this case, we have this MRI, particularly of the lumbar and thoracic spine, showing very severe limitations or very severe degeneration that the state agency doctors didn't review, and the ALJ is not qualified as a layperson to review and interpret on his own those reports. Did her counsel in the proceeding ask the state agency doctors to review the MRI and provide an updated opinion? No. In fact, I've never ever seen that, but no, it was not done in this case, Your Honor. And finally, as to the duty of articulation, the ruling, 16-3P, specifically says that we will explain which of the individual symptoms we found consistent or inconsistent with the record, and the ALJ did not do that in this case. Thank you, Your Honor. Thank you, counsel. Thanks to both counsel. And the case will be taken under advisement.